UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ERVIN STUBBS,

             Plaintiff,             Case No. 2:24-cv-22

v.                                       Honorable Jane M. Beckering

SARAH SCHROEDER et al.,

             Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MBP Warden Sarah Schroeder,

MBP Assistant Deputy Warden Unknown James, MBP former Assistant Deputy Warden Keith Pelky, MBP Captain Unknown Sebaly, and MBP Lieutenant Unknown Schroderus. Plaintiff is suing Defendants Schroeder, Pelky, Sebaly, and Schroderus in their respective official and personal capacities. Defendant James is mentioned only in the caption of the complaint. He is not included in the list of parties nor is he mentioned in the rest of the complaint.

Plaintiff alleges there are two units at MBP that are closed because of black mold and asbestos in the walls. He lives in a unit connected to the closed units. Plaintiff reports that he has not been sick the entire 14 years he has been incarcerated. He has been at MBP 11 years. During the fall of 2022, however, he "developed a very weird cough." (Compl., ECF No. 1, PageID.3.) Plaintiff was offered "a breathing solution to a possible fungi exposure." (*Id*.)

Plaintiff also claims that has fecal matter on the walls, that "the living conditions here are hazardous and inhumane/ill-treatment of prisoners." (*Id*.) Plaintiff notes that none of the officials have done anything to remove him from harm's way.

Plaintiff attaches to his complaint documents related to a grievance he filed regarding the mold and asbestos. (ECF No. 1-1, PageID.7–10.)[1] It is only by way of the grievance that Plaintiff specifically ties any of the defendants to the inhumane conditions he describes in the complaint.

---

[1] The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's allegations in the complaint and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). In considering the documents, the Court accepts as true Plaintiff's statements set forth in the grievance The Court does not accept as true the statements of the grievance responders.

In the grievance, Plaintiff explains that former MBP Warden Erica Huss and Defendant Warden Sarah Schroeder know about the hazardous black mold.

Plaintiff claims that he has "serious and chronic[ bronchial] breathing problems." (Grievance, ECF No. 1-1, PageID.7.) Plaintiff reports that since arriving in the unit he has had to use "both of [his] inhalers" constantly. (*Id.*) Plaintiff notes in his grievance that he "need not wait for a deprivation or injury to occur" before seeking relief. (*Id.*) He asks to be taken to a hospital to have his lungs checked before he is infected with black mold which cannot be treated or cured. (*Id.*) Finally, he asks to be transferred to a safe environment. (*Id.*)

Defendant Schroderus responded to the grievance at the first step and Defendant Sebaly reviewed the response. (*Id.*, PageID.8.) The Step I response indicates that Defendant Schroderus inspected C, D, and E Units[2], interviewed the physical plant supervisor and the RN supervisor, and reviewed the sanitation report. Defendant Schroderus denied Plaintiff's grievance because his investigation revealed that there was no black mold present in any of those units. He advised Plaintiff to submit a health care kite if he was having health issues.

Plaintiff appealed the Step I response. In explaining his reason for the appeal, Plaintiff noted that Defendants Schroeder and Pelky, along with CFA directors and the fire marshal walked through the unit on October 30, 2022, yet nothing had been done. (*Id.*, PageID.9.)

---

[2] At the time Plaintiff filed his grievance during the fall of 2022, it appears he was living in D Unit. The "Lock Number" handwritten by Plaintiff on the grievance and Step II appeal has a "D" prefix. (Grievance, ECF No. 1-1, PageID.7, 9.) Additionally, the Step I grievance response signed by Defendants Schroderus and Sebaly as well as the Step II grievance response signed by Defendant Schroder indicate that Plaintiff was housed in D Unit (*Id.*, PageID.8, 10). Plaintiff's complaint, however, suggests that Plaintiff resides in E Unit and that all of his allegations relate to that unit. (Compl., ECF No. 1, PageID.3.) It is certainly possible that Plaintiff was moved from D Unit to E Unit after he filed his grievance and Plaintiff simply failed to properly attribute his allegations to the correct unit in the complaint. Whether Plaintiff lived in D Unit or E Unit, the analysis of his claims yields the same result.

Defendant Schroeder responded to Plaintiff's grievance at Step II. She denied relief. (*Id.*, PageID.10.) Plaintiff appealed that decision as well. In explaining his reason for that appeal, he complained that Defendant Schroeder could not respond to that grievance under MDOC policy. (*Id.*, PageID.9.) Plaintiff also noted that C Unit and B Unit were shut down due to black mold. (*Id.*)

Plaintiff seeks $5,500.00 for each day he has been at MBP and exposed. He asks the Court to order that the facility be examined and condemned due to black mold contamination. Finally, he asks the Court to "ensure" that none of the Defendants remain employed with the MDOC. (Compl., ECF No. 1, PageID.4.)

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

4

relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's allegations implicate the protection against cruel and unusual punishment set forth in the Eighth Amendment.

### III. Eighth Amendment Conditions of Confinement

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part

5

of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### A.     Defendant James

Plaintiff fails to make specific factual allegations against Defendant James. Indeed, Defendant James is mentioned in the caption on the first page of the complaint, but does not appear in the listing of defendants, the factual allegations, or the attached documents.

6

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff fails to even mention Defendant James in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Therefore, Plaintiff has failed to state a claim against Defendant James.

B.     **Defendant Pelky**

Defendant Pelky is included in the caption and the list of defendants in the complaint, but he is not mentioned in the factual allegations. Pelky is mentioned in the reasons for Plaintiff's Step II grievance appeal. Plaintiff states: "In the week of October 30th, the Warden, Sarah Schroeder[] & ADW Pelky have had a tour of CFA directors & the fire marshall walk through here." (ECF No. 1-1, PageID.9 (grammar in original retained).)

A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Plaintiff fails to allege any facts to show that Defendant Pelky was involved in any of the alleged violations of Plaintiff's constitutional rights. Plaintiff's report that Defendant Pelky walked through the unit simply does not show that Defendant Pelky, through his own actions, violated the Constitution. Thus, Plaintiff has failed to state a claim against Defendant Pelky.

C.     **Defendant Schroderus**

The grievance response indicates that Defendant Schroderus investigated Plaintiff's grievance. Shroderus reported that he inspected all three units referenced by Plaintiff and he found no mold. (ECF No. 1-1, PageID.8.) That is not necessarily inconsistent with Plaintiff's contention that mold exists inside the walls of C Unit and Plaintiff's suspicion that it had spread to other units. Plaintiff does not state that he has actually seen mold, black or otherwise, in the units.

The grievance response also states that Defendant Schroderus did not stop with a physical inspection of the units, he interviewed the physical plant supervisor and the RN supervisor and he reviewed the sanitation report. As noted above, the Court does not accept as true Defendant Schroderus's statements in the grievance response, but those statements are, in fact, the only thing

8

we know about Defendant Schroderus from Plaintiff's submissions because Defendant Schroderus is not named in the body of Plaintiff's complaint.

Plaintiff has failed to allege any facts from which the Court can infer that Defendant Schroderus was aware of a serious risk of harm to Plaintiff and then disregarded that risk. Even accepting Plaintiff's statements in the grievance as true and disregarding Defendant Schroderus's efforts to investigate the claims, Schroderus would only know that there was black mold in Unit C and it had spread inside the walls of Units D and E.

For a condition of confinement to violate the Eighth Amendment, it must effectively deny the prisoner the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. It is certainly possible that exposure to black mold might be sufficiently serious to satisfy the objective requirement; but simply alleging the presence of black mold is not enough. *See, e.g.*, *McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *2–4 (W.D. Mich. Sept. 10, 2007) (citing *Brady v. State Farm Fire & Cas. Co.*, No. 05-30716, 2006 WL 551388, at *3 (5th Cir. Mar. 8, 2006); *Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005)), *report and recommendation adopted*, (W.D. Mich. Oct. 10, 2007) (dismissing prisoner action and holding that some exposure to black mold is a risk society has chosen to tolerate). Courts have looked to several factors to determine if the presence of black mold constitutes a risk of serious harm. The cases indicate that exposure to black mold might satisfy the objective standard if the prisoner alleges physical injury as a result of the exposure. *See, e.g.*, *Whiteside v. Smith*, No. 22-1071-SHM-tmp, 2023 WL 4410510, at *8 (W.D. Tenn. July 7, 2023) ("Whiteside's allegation of harm from the Shower Conditions could plausibly satisfy the objective component of the Eighth Amendment . . . ."); *Henderson v. Parin*, No. 3:22-cv-228, 2023 WL 369954, at *3 (S.D. Ohio Jan. 24, 2023) (report and recommendation concluding that the complaint must be dismissed "because plaintiffs have failed to allege that they

suffered a physical injury that was caused by exposure to black mold"; case voluntarily dismissed by Plaintiff after entry of the R&R); *Brown v. Penick*, No. 1:22-CV-P99-GNS, 2022 WL 16702802, at *7 (W.D. Ky Nov. 2, 2022) (finding that "because Plaintiff does not allege that the presence of mold in his cell caused him a health problem or created a substantial risk to his health . . . this claim must be dismissed for failure to state a claim upon which relief may be granted"); *Rogers v. MacClaren*, No. 1:20-CV-263, 2020 WL 3481541, at *8 (W.D. Mich. June 26, 2020) ( "Plaintiff does not suggest that the mold is airborne, and he does not allege that the presence of mold caused him a health problem or created a substantial risk to his health. As a consequence, Plaintiff's allegations about the presence of mold do not demonstrate the existence of a sufficiently serious risk to prisoner health.").

The most Defendant Schroderus would have learned about the impact of the black mold on Plaintiff is that Plaintiff suffered from a chronic bronchial breathing problem when he entered the units, as evidenced by Plaintiff's use of inhalers, and that he used the inhalers while he was on the unit. That sort of generic complaint of a "breathing problem" does not suffice to show a substantial risk of serious harm. This Court considered a virtually identical claim in *Patrick v. Schroeder*, No. 2:23-cv-26, 2023 WL2522057 (W.D. Mich. Mar. 15, 2023), *aff'd*, No. 23-1313, slip order at 2–3 (6th Cir. Oct. 5, 2023). Plaintiff's complaint in the *Patrick* case made the same allegations regarding the same units during the same time frame—in fact, it is obvious from the handwriting that the same person drafted the instant complaint and the *Patrick* complaint. The Court resolved Patrick's claim as follows:

> Here, nothing in Plaintiff's complaint suggests that the mold is airborne. Although Plaintiff states that he has experienced breathing issues, he attributes that to the mold without providing any further explanation or any supporting allegations that could permit the Court to infer that the mold "created a substantial risk to his health." *See Rogers v. Maclaren*, No. 1:20-cv-263, 2020 WL 3481541, at *8 (W.D. Mich. June 26, 2020). Plaintiff's general "allegations about the presence of mold

10

> do not demonstrate the existence of a sufficiently serious risk to prisoner health." *Id.* Plaintiff's allegations, therefore, fail to meet the objective prong of the deliberate indifference standard.

*Id*. at *5. The Sixth Circuit Court of Appeals affirmed the dismissal stating: "The district court did not err by dismissing Patrick's Eighth Amendment claims. In the body of his complaint, Patrick did not make specific factual allegations against any defendant showing that they knew of and disregarded an excessive risk from the alleged mold." *Patrick v. Schroeder*, No. 23-323, slip order at 2–3 (6th Cir. Oct. 5, 2023). The same result is appropriate in this iteration of the allegations. Plaintiff has failed to state a claim against Defendant Schroderus.

### D.     Defendants Sebaly and Schroeder

Defendants Sebaly and Schroeder both reviewed the grievance after Defendant Schroderus's investigation and denial. Both are supervisors of one or more of the other named defendants. To the extent Plaintiff depends on that relationship to impose liability, he has failed to state a claim.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the

11

official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Sebaly and Schroeder engaged in any active unconstitutional behavior—i.e. that they were aware of a substantial risk of serious harm to Plaintiff and then consciously disregarded that risk. Accordingly, Plaintiff fails to state a claim against them.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: February 23, 2024  /s/ Jane M. Beckering
Jane M. Beckering
United States District Judge